UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| TOMMY CLARK, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | No. 3:17-cv-00033 |
| ) | REEVES/POPLIN |
| SAFECO INSURANCE COMPANY OF ) | |
| ILLINOIS, ) | |
| ) | |
| *Defendant*. ) | |
| ) | |
| ) | |

### MEMORANDUM OPINION

Plaintiff Tommy Clark demands coverage from Safeco, his automobile insurance provider, because the customized drag racing engine in his 2004 Ford Mustang Cobra S failed. Clark asserts causes of action against Safeco for breach of contract, bad faith failure to pay under Tenn. Code Ann. § 56-7-105(a), and for punitive damages.

The case is before the court on Safeco's motion for summary judgment.

**I.  Background**

Clark purchased the chassis of a 2004 Ford Mustang Cobra S for $910.00. When purchased, the Mustang had no windshield, doors, or engine. Clark modified the Mustang for racing purposes by stripping the interior, installing a roll cage, and equipping a kit for the use of nitrous oxide. In addition, he purchased a used "aftermarket" engine to be

1

installed in the Mustang for drag racing. He hired B&R Automotive and Diesel Machine Shop, to assemble the engine, during which B&R installed new parts in the engine. Clark drove the Mustang at local dragstrips in test trials, which were designed to determine whether the Mustang was ready to drag race. Clark last drove the Mustang on November 26, 2015. On that day, he parked it outside next to his residence. Clark claims it rained repeatedly while the Mustang was sitting outside. On December 5, 2015, Clark attempted to start the engine. Although he had difficulty getting the engine to start, he eventually started it at least two times and kept it running for approximately 15-20 minutes. Clark noticed that the engine had some problems. He drove the Mustang to his father-in-law's garage and partially disassembled the engine. Clark avers that rainwater bounced off his windshield and entered the carburetor of the engine. Clark asserts that rainwater was in the engine when it was started causing damage to the engine due to hydrolock.

Clark purchased an insurance policy from Safeco for the Mustang. The policy provided comprehensive coverage for the Mustang but contained an exclusion for damage or loss due to wear and tear or mechanical breakdown or failure. Following receipt of the claim, Safeco representative Richard Krieger inspected the Mustang. At Safeco's request, a representative of Centro Inspections, Hobart Lumpkin, inspected the Mustang. Lumpkin had performed inspections of alleged hydrolocks on at least 100 prior occasions. Lumpkin found no indication of hydrolock damage to the engine. Instead, he found that the damage was caused by a detonation event, which occurs when an engine experiences excessively high combustion temperatures. Lumpkin specifically found that no water had entered the

engine and further found that water had not caused the damage to the engine. Thereafter, Safeco issued a denial letter to Clark with regard to his claim.

Clark filed this action asserting a claim for comprehensive coverage under the policy stating that the custom engine sustained significant damage due to hydrolock and stating that the hydrolock occurred when he started the engine without knowing that water had seeped into the engine under the closed hood.

In January 2016, Clark hired Gary Litton to prepare a report. Litton is a private investigator with experience as a nitromethane "funny" car driver. Litton issued a report finding that the engine failed because it experienced hydrolock and not mechanical failure.

Safeco sent Litton's report to Centro for review. Gregory Ciocher of Centro issued a report stating there was no evidence to support Clark's claim that the engine damage was the result of water injection and hydrolock. Ciocher further stated that the engine was damaged as a result of detonation, which is common in high performance engines.

Safeco then retained Marc Cammack as an expert to inspect the engine. Cammack stated that the damage to the engine was not consistent with hydrolocking, but was consistent with premature ignition and detonation while the engine was running. Cammack opined that the engine suffered a mechanical failure due to a pre-detonation event or improper nitrous timing, not hydrolock. Cammack found Clark's statement that he was able to start the engine while it was filled with rainwater was impossible. Cammack testified that he was not aware of hydrolock occurring from a parked engine and a cold start. Cammack further opined that the 3.4 horsepower starter Clark installed in the

Mustang was insufficient to ignite the engine while water was present inside the engine and to cause the damage observed in the engine.

**II. Standard of Review**

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 330 n. 2 (1986); *Moore v. Philip Morris Co., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Keifer*, 301 F.3d 937, 942 (6th Cir. 2002).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. *Celotex*, 477 U.S. at 317. To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the court search the record "to establish that it is bereft

of a genuine issue of fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

**III.**     **Discussion**

Clark asserts a state law claim for breach of contract against Safeco for failure to pay on his insurance claim that the Mustang's engine was damaged by hydrolock. Under Tennessee law, the elements for a breach of contract are (1) existence of a contract; (2) nonperformance amounting to a breach; and (3) damages cause by the breach. *Ingram v. Cendant Mobility Financial Corp.,* 215 S.W.3d 367, 374 (Tenn.Ct.App. 2006). The issue in dispute is whether Safeco's denial of Clark's claim is a breach of the insurance contract.

Safeco moves for summary judgment on all Clark's claims. In support of the motion, Safeco relies on the opinions of its three experts that the failure of the engine was a mechanical failure, which is expressly barred from coverage under an exclusion in the policy. Safeco also relies on the fact that Clark lacks any expert proof to show that the alleged loss was due to hydrolock.[1] The court has found that Litton is not qualified as an expert to opine on the failure of the engine. Litton lacks any professional experience as a mechanic or engineer. He did not perform any testing to determine whether hydrolock

---

[1] The Magistrate Judge excluded opinions and testimony by Clark's expert witness, Gary Litton. Clark's objections to the Magistrate Judge's Memorandum and Order were overruled by the undersigned, and the order excluding Litton from giving expert testimony in this case affirmed.

occurred. He based his opinions on Clark's statements about what occurred. Because the court has excluded Litton from giving testimony at trial, Clark does not have admissible proof as to the cause of the engine's failure.

Safeco, on the other hand, has proffered three experts with experience and technical expertise in investigating damage to engines. Safeco has the only proof on the issue of causation as to the engine failure. Each of Safeco's experts agree the cause of the engine damage was a mechanical failure due to a detonation event, which occurs during the ordinary or normal operation of the engine. Safeco's policy excludes coverage for damage due to wear and tear and/or mechanical breakdown or failure. Safeco's experts establish that Clark's theory of hydrolock was not the cause of failure of the engine. All three experts stated there was no evidence of hydrolock, and they further opined that hydrolock was not possible during a cold start to the engine.

In his response, Clark agrees that if Litton is excluded, he has no other designated expert. Instead, Clark states that based on his own experience, he would be able to testify as to the facts and circumstances leading to the cause of the engine failure. Clark submitted an affidavit attesting to his opinion of the cause of the engine failure. However, Clark's affidavit is inadmissible as lay opinion testimony under Federal Rule of Evidence 701. The rule provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>     (a) rationally based on the witness's perception;
>     (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>     (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

The commentary to Rule 701 refers to these witnesses as "fact" witnesses. Fact witness testimony may be relevant because it is based on first-hand knowledge – the witness knows something to be true because they saw something, heard something, experienced something, *i.e.*, they were *there*. *Weissenberger's Federal Evidence Courtroom Manual*, Ch. 701 (emphasis in original).

Here, Clark lacks personal knowledge regarding whether water entered the engine and is merely speculating that water cause the engine failure. Clark stated in his deposition that he was not an expert regarding issues relating to the cause of the engine damage. He stated this was the first hydrolock engine he had dealt with. When asked how hydrolock occurs, he responded that he was not a professional. When asked about the starter he installed in the Mustang, he responded "I'm not an expert . . . I don't know. And, when asked how the rules of physics apply to the engine, he responded "I don't know. I'm not a scientist." It is clear to the court that Clark lacks the experience, training, qualifications, and methodology necessary to opine as to the cause of the engine failure. Establishing the cause of the engine's damage, whether it be mechanical failure or hydrolock, is beyond the expertise of a lay observer and requires expert testimony given the necessary educational or experiential background to diagnose such a problem. The court finds that Clark's proffered testimony is not admissible because he is not qualified as an expert in this case and his opinion as to the cause of the engine failure is inadmissible lay opinion testimony. *United States v. Grinage,* 390 F.3d 746, 750 (2nd Cir. 2004) (admission of witness's testimony was improper when witness was not qualified as an expert and testimony

7

included an interpretation of evidence; the witness usurped the function of the jury to decide what to infer from the evidence).

Without the testimony of Litton as an expert, there is no expert testimony to support Clark's allegation that the engine damage was the result of a coverable incident under his policy of insurance. Because Clark has not submitted admissible proof that the damage to the engine did not result from wear and tear or a mechanical breakdown or failure, he is unable to establish that Safeco is in breach of the insurance contract. Thus, his claim for breach of the insurance contract fails as a matter of law. Similarly, his claims for punitive damages and bad faith under Tenn. Code Ann. § 56-7-105 fail as well.

## IV. Conclusion

In light of the foregoing discussion, the court finds Safeco's motion for summary judgment [R. 18] well taken and the motion is **GRANTED**. This action is **DISMISSED in its entirety.**

**ENTER. ORDER TO FOLLOW.**

*/s/ Pamela L. Reeves*
**UNITED STATES DISTRICT JUDGE**